Filed 6/27/22  P. v. Jaimes-Mendoza CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>JUAN GABRIEL JAIMES-MENDOZA,<br><br>    Defendant and Appellant. | A163059<br><br>(Solano County<br>Super. Ct. No. FCR276110) |

This appeal comes back to us after we reversed and remanded for further consideration a defendant's suitability for conditional release from a state hospital to which he had been committed.

In 2012, defendant Juan Gabriel Jaimes-Mendoza was found not guilty by reason of insanity of killing his wife and committed to Napa State Hospital (NSH). In 2018, NSH recommended conditional outpatient treatment for defendant as provided under Penal Code section 1600, et seq.[1] Following a three-day evidentiary hearing in Solano Superior Court in January 2019, the trial court denied defendant's request for outpatient status, and defendant appealed.

To obtain court approval for outpatient status, it was defendant's burden to demonstrate he was either "[1] no longer mentally ill or [2] no

---

[1] Further undesignated statutory references are to the Penal Code.

1

longer dangerous." (*People v. McDonough* (2011) 196 Cal.App.4th 1472, 1475 (*McDonough*).)  In denying defendant's request, the trial court addressed the first issue—whether defendant was no longer mentally ill.  But it appeared the court did not consider the second issue—whether defendant was no longer dangerous.  Therefore, in *People v. Jaimes-Mendoza* (Nov. 30, 2020, A156715) [nonpub. opn.] (*Jaimes-Mendoza I*), we reversed and remanded the matter for the trial court to determine, based on "the evidence already submitted and any other relevant evidence offered by the parties," whether defendant could show that he was either no longer mentally ill or not dangerous under supervised outpatient treatment.

But circumstances have changed since defendant's first appeal.  At the evidentiary hearing in January 2019, defendant's treating psychiatrist at NSH testified defendant was suitable for supervised treatment in the community, two NSH psychologists assessed defendant's risk of violence in the community under the supervision of the conditional release program (CONREP) as low, and the Solano County CONREP had determined that defendant was an appropriate candidate for outpatient treatment.

More recently, however, defendant tested positive for two controlled substances in June 2019, CONREP has taken the position that defendant is *not* ready for conditional outpatient treatment, NSH staff have assessed defendant's risk of violence in the community as *moderate to high* due to his past history of severe violence and severe substance abuse, and NSH *no longer recommends* conditional outpatient treatment for defendant.

After our remand in *Jaimes-Mendoza I*, the trial court again denied defendant outpatient status, this time expressly finding that defendant has not shown that he is either no longer mentally ill or no longer dangerous.  It

is from this order, dated July 8, 2021, that defendant appeals. Finding that the trial court did not abuse its discretion in making this ruling, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We place the issue on appeal in context by starting with the January 2019 hearing that occasioned our remand in *Jaimes-Mendoza I*.

### *January 2019 Hearing*

The evidence presented at the three-day hearing on defendant's request for outpatient status is described in detail in *Jaimes-Mendoza I*. (See *Jaimes-Mendoza I*, *supra*.) In brief, there was uncontradicted testimony that defendant had shown no signs or symptoms of mental illness since he had been hospitalized, he had no incidents of aggression or other concerning behavior since hospitalization, he participated in substance-use-disorder-related meetings, he was willing to work with CONREP, and he had recently been in contact with his family, who could provide him some emotional support in the community. As we have mentioned, two NSH psychologists (Peter Pretkel and John Steward) assessed defendant's risk of violence in the community under supervision as low, and in May 2018, the community program director of Solano County CONREP determined defendant was appropriate for outpatient treatment.

But there was also testimony from Muhammad Tariq, defendant's treating psychiatrist at NSH, who diagnosed defendant with amphetamine-induced psychotic disorder among other conditions, that there would be "a risk again [presumably referring to risk of violence] if he does drugs." There was evidence that defendant tested positive for the drug Tramadol on one occasion during his hospitalization, a prescription drug that had not been

3

prescribed for him.[2]  Dr. Steward testified it was "very, very difficult to predict violent behavior, future behavior" and the "best predictor of future behavior is past behavior."  He testified that drug treatment is "so important . . . that [patients] develop an awareness of their triggers and warning signs; that they are committed to living drug-free lives; that they have insight.  I mean, these are the factors that really contribute to one being able to make an educated assessment as to the likelihood or probability of them either tending to be violent or not violent."

There was evidence defendant had dissociative amnesia and depersonalization disorder, and Dr. Pretkel testified defendant "reported that he can feel unreal in times of family stress or financial stress."  Pretkel testified the "ability to handle stress" was a factor considered in assessing risk of violence.  Defendant did not remember killing his wife because of dissociation, although he did acknowledge that he killed her.  A psychologist who evaluated defendant in 2011, Janice Nakagawa, testified defendant's diagnoses of dissociative amnesia and depersonalization disorder based on his lack of memory of the offense would be cause for concern.[3]  Another psychologist who evaluated defendant in 2011, Ricardo Winkel, testified his impression then was that defendant "exercised very poor judgment based on . . . a severely distorted perception of reality."

---

[2] Dr. Pretkel testified one could get "kind of high" from Tramadol, but he believed CONREP would provide frequent drug testing, which would manage defendant's risk in the community.

[3] Dr. Nakagawa testified, "In a dissociative state, one is not aware of what's happening.  If the argument is that this individual was experiencing . . . dissociative amnesia or dissociative episodes at the time of the instant matter, in which that individual acted out in a very unpredictable violent manner, there certainly is cause for concern that that potentially may happen in the future; but who knows?"

*New Evidence and Argument on Remand*

Since the January 2019 hearing, NSH has submitted semiannual progress reports to the court dated February 20, 2020, August 24, 2020, and March 1, 2021.[4] In these three recent reports, NSH no longer recommended conditional outpatient treatment for defendant.

The February 2020 report stated that in June 2019, defendant tested positive for Quetiapine and Neurontin, two medications he was not prescribed. Each of the medications was prescribed to only one patient in the unit, and those two patients were well known to defendant. Defendant maintained that he did not take these medications. As a result of the positive test, NSH transferred defendant from the discharge unit to a substance abuse treatment unit. It was further reported that defendant lacked insight, he did not wish to discuss the details of the offense, and he did not remember killing his wife, although he did acknowledge that he killed her.

The March 2021 report stated that in 2020, a CONREP representative concluded defendant was "not COT ready," meaning defendant was deemed not ready for conditional outpatient treatment. The CONREP representative said defendant needed to demonstrate psychiatric stability. It was also reported that defendant had not completed the program in his substance abuse treatment unit, and defendant told an NSH psychiatrist he was interested in outpatient treatment, and he would try to finish the unit program first.

In June 2021, the parties submitted the matter to the trial court on the three recent progress reports, and the court heard argument. Defense counsel noted defendant had not had any incidents of violence in his nine

---

[4] A subsequent fourth progress report was submitted, but only these three reports were considered by the trial court on remand.

years in the hospital, he was not on any psychotropic medication, and he had not had another substance abuse issue since June 2019. She argued defendant demonstrated psychiatric stability, and there was no "specific factor that can be pointed to" showing defendant was "a danger right now." The prosecutor relied on NSH's assessment that defendant's risk of violence in the community was moderate to high and CONREP's own determination that defendant was not ready for outpatient treatment.

*Trial Court Ruling*

After considering witness testimony and its own notes from the January 2019 hearing, the three new NSH progress reports, and counsels' argument, the trial court denied defendant's request for outpatient status.

In stating its ruling, the court began by acknowledging evidence in defendant's favor—he had no incidents of aggression while hospitalized; he was not on medication; NSH staff observed no psychotic symptoms; he was polite, respectful and pleasant during interviews; and in 2018, both NSH and CONREP had recommended he be released to an outpatient program.

But, the court noted, both NSH and CONREP had since changed their opinion on defendant's readiness for outpatient status. The court cited defendant's two separate incidents of positive drug tests. The more recent incident involved two different medications, and it could be inferred from the circumstances that defendant obtained the medications from the two patients who were prescribed them. Defendant had not yet completed the substance abuse treatment program, and the court observed, "completing that substance abuse treatment program is critical to minimize his risk of harm to the community while under supervision. And I believe there is . . . testimony of that in the 2019 hearing."

6

The court also found defendant's level of insight and the circumstances of the underlying offense weighed against finding him not dangerous. The court stated, "So according to the March 1st, 2021 report, [defendant] still lacks some insight, doesn't wish to discuss the details of his crime, doesn't recall killing his wife." The court had presided at the preliminary hearing on the underlying offense, and the court recounted, "it wasn't just that he shot and killed his wife on the day in question, but there was testimony" about other disturbing incidents including defendant "locking his wife and children up in a camper on the ranch a week or two before the crime." The court continued, "So there's a little more to the risk analysis, in my view at least, than just the fact that he shot and killed his wife."

The court concluded, "I just don't see, as of today's date and time, the defendant has met his burden of showing by a preponderance of the evidence that he's either no longer legally insane, or . . . no longer a danger to the community . . . ."

## DISCUSSION

A.  *Legal Framework, Burden of Proof, and Standard of Review*

When a defendant is found not guilty by reason of insanity, the trial court may order the defendant committed to a state hospital or other appropriate facility unless it appears the sanity of the defendant has been fully restored. (§ 1026, subd. (a); *People v. Cross* (2005) 127 Cal.App.4th 63, 72 (*Cross*).) A defendant so committed to a state hospital may be released in one of three ways: "(1) upon restoration of sanity pursuant to the provisions of section 1026.2, (2) upon expiration of the maximum term of commitment under section 1026.5 [citation], or (3) upon approval of outpatient status pursuant to the provisions of section 1600 et seq. (§ 1026.1.)" (*People v. Sword* (1994) 29 Cal.App.4th 614, 620 (*Sword*).)

7

Under the third procedure (which was invoked in this case and thus was our framework for analysis in *Jaimes-Mendoza I*), a defendant "may be placed on outpatient status upon the recommendation of the state hospital director and the community program director with the court's approval after a hearing." (*Cross, supra,* 127 Cal.App.4th at p. 72, citing § 1603 and *Sword, supra,* 29 Cal.App.4th at p. 620.) It is the defendant's burden to prove by a preponderance of the evidence that he "is 'either no longer mentally ill or not dangerous.' " (*McDonough, supra,* 196 Cal.App.4th at p. 1491, italics omitted.)

In deciding whether to grant outpatient status, the trial court must consider whether the director of the state hospital or other treatment facility "advises . . . that the defendant would no longer be a danger to the health and safety of others, including himself or herself, while under supervision and treatment in the community, and will benefit from that status" and "[w]hether the community program director advises the court that the defendant will benefit from that status, and identifies an appropriate program of supervision and treatment." (§ 1603, subds. (a)(1), (2).) The court also "shall consider the circumstances and nature of the criminal offense leading to commitment" and the defendant's prior criminal history. (§ 1604, subd. (c).)

We review the trial court's denial of outpatient status for abuse of discretion. (*Cross, supra,* 127 Cal.App.4th at p. 73.) "[I]t is not sufficient to show facts affording an opportunity for a difference of opinion. [Citation.] 'A trial court's exercise of discretion will not be disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice. [Citation.] In other words, discretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered.' " (*Ibid*.)

B.    *Analysis*

Defendant contends the trial court abused its discretion in denying him outpatient status because he proved by a preponderance of the evidence that he would no longer be a danger while under supervision and treatment in the community.  The question on appeal, however, is not whether we might view the evidence as sufficient to grant defendant outpatient status.  The question is whether the trial court's contrary finding was an abuse of discretion.  We see no such abuse of discretion.

As we have described, the trial court was required to consider (1) the director of the state hospital's opinion regarding whether defendant would no longer be a danger under outpatient treatment (§ 1603, subd. (a)(1)), (2) the CONREP program director's opinion regarding whether there is an appropriate outpatient program for defendant and whether he would benefit from outpatient status (*id.*, subd. (a)(2)), and (3) the circumstances and nature of the criminal offense leading to commitment (§ 1604, subd. (c)).  In this case, all these factors weighed against defendant—NSH did not recommend outpatient status, CONREP deemed defendant "not COT ready," and the trial court was understandably disturbed by the circumstances surrounding the underlying offense, which included defendant locking his family in a camper while he was in a paranoid and delusional state.

The trial court also relied on defendant's positive drug tests and defendant's level of insight as weighing against outpatient status.  As to the latter consideration, the court noted defendant "still lacks some insight, doesn't wish to discuss the details of his crime, doesn't recall killing his wife," referencing the progress report from March 1, 2021. Defendant asserts the March 2021 report "paints [defendant's] insight and understanding of his offense in a much better light than the trial court described."  But the report

9

states defendant's "predominant risk factors" include "some limited insight," which suggests defendant's lack of full or complete insight is a risk factor and is consistent with the court's description that he "lacks some insight."

Defendant argues the trial court "undervalued" factors that supported outpatient status and states, "whether the trial court abused its discretion in denying appellant outpatient status again in 2021 largely comes down to whether, in assessing the risk of danger he would present in a supervised outpatient setting, the positive drug tests in 2019 *outweighed* his nine years at NSH with no dangerous behavior toward others, no symptoms of mental illness despite going untreated with any psychiatric medications, and nearly 100% participation in the treatment opportunities made available to him." (Italics added.)

A similar argument about the weight of the evidence was rejected in *Sword*. In that case, NGI defendant Sword sought outpatient status, and "the witnesses uniformly testified that, in their opinion, [Sword] was no longer dangerous," but "the trial court rejected that testimony [based on] perceived gaps in their understanding or knowledge of events shown in defendant's file, and their failure to consider certain facts." (*Sword, supra*, 29 Cal.App.4th at p. 625.) The prosecution did not offer any witnesses supporting its position that Sword was still dangerous, and Sword argued on appeal that "the trial court abused its discretion in failing to decide the case in accordance with the *overwhelming weight of the evidence*." (*Id*. at p. 626, italics added.) The Court of Appeal agreed with Sword that there was "ample evidence of lack of dangerousness" and stated the issue on appeal was therefore "whether the trial court abused its discretion in deciding the case contrary to the weight of the evidence." (*Ibid*.) The court explained its task: "We therefore consider whether the record demonstrates reasons for the trial

court's disregard of the opinion of the treating doctors and other specialists who testified that defendant was no longer dangerous." (*Ibid*.) Thus, the *Sword* court did not find abuse of discretion merely because the *weight* of the evidence favored the defendant. Instead, the court considered "whether the trial court relied on the proper factors, and whether the factors found some support in the record." (*Id*. at pp. 626–627.)

In *Sword*, the appellate court considered the trial court's reasons for rejecting the weight of the evidence in favor of outpatient status and concluded the reasons were not arbitrary and therefore there was no abuse of discretion. (*Sword*, *supra*, 29 Cal.App.4th at pp. 629–631.)

Applying the same considerations, we conclude the trial court relied on proper factors that found support in the record. Indeed, defendant *agrees* the court could rely on the positive drug tests and "takes no issue" with the trial court's understanding of the facts regarding the June 2019 drug test. Defendant further *concedes* the June 2019 test is evidence of "concerning behavior." In his reply brief on appeal, defendant's counsel candidly "acknowledge[s] [defendant's] positive test for two controlled substances would reasonably give any trier of fact pause before approving an outpatient request." The evidence of drug use is particularly salient in this case given the testimony that drug treatment, a "commit[ment] to living drug-free," and "awareness of . . . triggers" are "so important" in defendant's case because these "factors . . . really contribute" to the risk assessment of whether defendant will be violent.

Defendant's remaining arguments do not convince us the trial court abused its discretion in denying defendant outpatient status. He asserts the recent NSH progress reports are internally inconsistent. But he has not shown the trial court was therefore *required* to reject the NSH and CONREP

current recommendations. Defendant claims the positive drug test in June 2019 did not render him too dangerous for outpatient treatment in 2021 and completing a treatment program was not necessary for him to obtain outpatient status. But we cannot say it was an abuse of discretion for the trial court to reach a different conclusion given the testimony about how central substance abuse treatment was to defendant's risk of future violence. Defendant argues he has sufficient insight, but again, we cannot say it was an abuse of discretion for the trial court to disagree. At bottom, defendant wishes the trial court had accepted the opinions and findings of NSH staff (Drs. Tariq, Pretkel, Steward) and CONREP made in 2019 and rejected the contrary recommendations made more recently by different NSH and CONREP staff. But he has not shown the trial court abused its discretion in assessing the evidence differently.

## DISPOSITION

The order denying outpatient status is affirmed.

_____
Miller, J.

WE CONCUR:


_____
Stewart, Acting P.J.


_____
Mayfield, J.*




A163059, *People v. Jaimes-Mendoza*

_____

 * Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.